UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MIDWEST REGIONAL BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:18 CV 1217 RWS |
| | ) |
| CARIBOU ENERGY CORPORATION, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

### **MEMORANDUM & ORDER**

This matter is before me on Plaintiff Midwest Regional Bank's motion for summary judgment against Individual Defendants Robert Williamson and Christopher Scott Yenzer.  Williamson and Yenzer do not contest any of Midwest Regional Bank's statement of material facts; they instead argue their affirmative defenses that I do not have jurisdiction in this case and that the Bank has failed to mitigate its damages.  For the reasons below, I will grant Midwest Regional Bank's motion for summary judgment.

**I.     BACKGROUND**

On April 20, 2016, Caribou Energy Corporation executed a Note in favor of Midwest Regional Bank under which Midwest Regional Bank agreed to loan Caribou $1,923,000, to be paid back with interest in equal monthly installments. See Pl.'s Statement of Uncontested Material Facts (SUMF), ECF No. 48, ¶ 4.  In

addition to the repayment terms, a condition of the loan was that Caribou's ownership was not to change without Midwest Regional Bank's prior written consent.  See Ex. 4 to Pl.'s SUMF, ECF No. 48-4, ¶ 4(L).  Another condition was that Defendants Robert Williamson and Christopher Scott Yenzer ("Individual Defendants") had to personally guarantee repayment of all amounts owing under the loan.  See id. Exs. 6, 7.

Caribou defaulted under the terms of the Note when it missed monthly payments and late charges and when the Individual Defendants, in their capacities as the sole owners and shareholders of Caribou, transferred ownership of Caribou without the Bank's consent.  When Caribou defaulted, Midwest Regional Bank wrote to Caribou and the Individual Defendants to inform them of the default and acceleration of the balance due under the Note.  Despite the Bank's demand for payment of the total balance due pursuant to the Note and the Unconditional Guarantees executed by the Individual Defendants, the Individual Defendants have not paid the amount due.

Caribou did not enter an appearance or answer the Complaint, and I entered a Default Judgment against Caribou on December 19, 2018.  The Individual Defendants have appeared at case proceedings pro se; they have argued that the Court does not have personal jurisdiction over them and that Midwest Regional Bank has failed to mitigate its damages.

## II. LEGAL STANDARD

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving parties, demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Lynn v. Deaconess Medical Center, 160 F.3d 484, 486 (8th Cir. 1998) (citing Fed. R. Civ. P. 56(c)). The party seeking summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the affidavits, pleadings, depositions, answers to interrogatories, and admissions on file that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When such a motion is made and supported by the movant, the nonmoving parties may not rest on their pleadings but must produce sufficient evidence to support the existence of the essential elements of their case on which they bear the burden of proof. Id. at 324.

## III. DISCUSSION

The Individual Defendants do not contest Midwest Regional Bank's factual representations regarding the terms of the Note and Unconditional Guarantees, and I find that the Individual Defendants have admitted the factual statements contained in Midwest Regional Bank's Statement of Uncontested Material Facts. See Roe v. St. Louis Univ., 746 F.3d 874, 881 (8th Cir. 2014) ("The movant's facts

3

will be admitted unless specifically controverted. If no objections have been raised in the manner required by the local rules, a district court will not abuse its discretion by admitting the movant's facts.") (internal quotation marks and citations omitted).

Instead, the Individual Defendants oppose summary judgment on two grounds: (1) this Court lacks personal jurisdiction over the Individual Defendants, and (2) Midwest Regional Bank failed to mitigate the damages that resulted from Caribou's default. I find that this Court has personal jurisdiction over the Individual Defendants and that there is no factual dispute that Midwest Regional Bank has sufficiently mitigated its damages. Furthermore, I find that Midwest Regional Bank has established that it is entitled to summary judgment and that the Individual Defendants are liable to the Bank for the amount due under the Note.

### a. Personal Jurisdiction

The Individual Defendants argue that this Court does not have personal jurisdiction over them. They are not residents of Missouri and assert that they "have no connections to Missouri, do not do business here, and do not travel or reach out to Missouri for any business or personal reasons." Def.'s Opp'n to Summ. J., ECF No. 50, pp. 2-3. The Individual Defendants first asserted lack of personal jurisdiction in the affirmative defenses section of their Answer [ECF No.

4

30, p.10], and I find that they have not implicitly waived their personal jurisdiction objection through their conduct in this litigation.

"A federal court in a diversity action may assume jurisdiction over nonresident defendants only to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004) (quoting Morris v. Barkbuster, Inc., 923 F.2d 1277, 1280 (8th Cir.1991)). Missouri's long-arm statute permits jurisdiction over defendants who transact "any business within this state" or make "any contract within this state." § 506.500 RSMo. Because the "Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause," the question before me is "whether the assertion of personal jurisdiction would violate the due process clause." Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004). The Court's exercise of "[j]urisdiction over a defendant does not offend due process's 'traditional notions of fair play and substantial justice' if the defendant has 'minimum contacts' with the forum state." Henry Law Firm v. Cuker Interactive, LLC, 950 F.3d 528, 532 (8th Cir. 2020) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-92 (1980)). Courts

> apply a five-factor test to determine the sufficiency of a defendant's contacts: (1) the nature and quality of the contacts, (2) the quantity of the contacts, (3) the relationship of the cause of action to the contacts, (4) the

> interest of the forum state in providing a forum for its residents, and (5) the convenience or inconvenience of the parties.

Henry Law Firm, 950 F.3d at 532 (citing Fastpath, Inc. v. Arbela Techs. Corp., 760 F.3d 816, 821 (8th Cir. 2014). In evaluating the five factors, I give "significant weight to the first three factors." Fastpath, 760 F.3d at 821 (citing Dever, 380 F.3d at 1074).

Here, my analysis of the five factors turns on whether the Individual Defendants' actions as guarantors, owners, and directors of Caribou created sufficient minimum contacts with Missouri. While the Court may not exercise jurisdiction over non-resident guarantors merely because they "guaranteed an obligation to a [forum citizen] corporation," the Court may assert jurisdiction when there also exists "substantive identity of the guarantors and the corporation whose obligation they guarantee [or] evidence that the beneficiary of the guarantee contract would not have entered into the transaction without the guarantees of specific individuals.'" Arkansas Rice Growers Co-op. Ass'n v. Alchemy Indus., Inc., 797 F.2d 565, 573–74 (8th Cir. 1986) (citations omitted).

The factual record demonstrates that the Individual Defendants each "purposefully directed" business contacts to Midwest Regional Bank's Missouri office, Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985), and they "should have reasonably anticipated being haled into court" in Missouri. Henry Law Firm, 950 F.3d at 533. First, the Individual Defendants knew they were

6

guaranteeing an obligation to a Missouri corporation.  Though Midwest Regional Bank also has a physical presence in Colorado, where the Individual Defendants conducted their business activities with the Bank, Midwest Regional Bank provides evidence that establishes the Individual Defendants would have known they were contracting for a loan from a Missouri bank.

     On April 20, 2016, the date the Individual Defendants signed the Unconditional Guarantees, Robert Williamson, in his capacity as Caribou's President, also signed a Commercial Security Agreement with a Choice of Venue clause stating, "If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of JEFFERSON County, State of Missouri." [ECF No. 48-14, p. 4]  After the Bank made the loan, the Individual Defendants had "direct and continued communication with Plaintiff's employees in Missouri via telephone and email."  Plaintiff's SUMF, ECF No. 48, ¶ 25.  This included e-mail communications regarding the payment of the loan obligation with a Bank employee who listed the Midwest Regional Bank's Missouri address in her email signature [ECF No. 48-13].  The Individual Defendants also responded to the Bank's loan approval letter with signed personal guarantees on Midwest Regional Bank stationery that contained the Bank's Missouri address [ECF No. 48-12].  Even if the Individual Defendants conducted their business activities in Colorado, they "most certainly knew that" they were affiliating themselves with an enterprise

7

based primarily in Missouri when they obtained the loan from Midwest Regional Bank. Burger King, 471 U.S. at 480. I find that the Individual Defendants in this case knew they were guaranteeing a loan made by a Missouri bank.

Next, the record also establishes that there is "substantive identity of the guarantors and the corporation whose obligation they guarantee," as well as "evidence that the beneficiary of the guarantee contract would not have entered into the transaction without the guarantees of specific individuals." Arkansas Rice Growers, 797 F.2d at 573–74 (internal citations omitted). In addition to being personal guarantors of the Note, the Individual Defendants were the sole shareholders, directors and officers of Caribou. SUMF ¶ 30; Pitlyk Aff., ECF No. 48-1, ¶ 10. Midwest Regional Bank would not have made the loan to Caribou without the Unconditional Guarantees of Yenzer and Williamson. Pitlyk Aff., ECF No. 48-1, ¶ 8.

The balance of the remaining factors set forth in Fastpath also weigh in favor of this court's jurisdiction. While the documentary evidence shows few contacts between Caribou and Bank personnel in Missouri, the cause of action directly relates to the limited contacts in the record. There are numerous additional direct contacts alleged in the employee affidavit attached to Midwest Regional Bank's Statement of Uncontested Material Facts; the Individual Defendants to do not contest these contacts occurred. Moreover, because Midwest Regional Bank is a

8

Missouri resident corporation, Missouri has an interest in providing it a forum. Finally, the Defendants are not in Missouri, but Midwest Regional Bank's headquarters, the loan documents, and at least some witnesses are in Missouri. While it might be less convenient for the Individual Defendants to litigate here, the convenience factor does not weigh heavily in favor of, or in opposition to, this Court exercising jurisdiction over the Individual Defendants.

It comports with Missouri's long-arm statute and due process requirements for this Court to exercise personal jurisdiction over the Individual Defendants.

**b. Mitigation**

The Individual Defendants next argue that Midwest Regional Bank failed to mitigate its damages. Specifically, they contend that the Bank received an offer to "cure" the loan from SEER Corp., which would have resulted in repayment in full of the loan.

As an initial matter, the Individual Defendants waived most of their mitigation defenses. Under Missouri law, "the 'liability of a guarantor is to be construed strictly according to the terms agreed upon, and a guarantor is bound only by the precise words of his contract[.]'" PNC Bank, Nat. Ass'n v. El Tovar, Inc., No. 4:13-CV-1073 CAS, 2014 WL 538810, at *7 (E.D. Mo. Feb. 11, 2014) (citing Pelligreen v. Century Furniture & Appliance Co., 524 S.W.2d 168, 172

9

(Mo.Ct.App.1975)).  As a result, the precise terms of Unconditional Guarantees establish that the guarantors waived the following mitigation defenses:

> 6. [Midwest Regional Bank] did not dispose of any of the Collateral;
> 7. [Midwest Regional Bank] did not conduct a commercially reasonable sale;
> 8. [Midwest Regional Bank] did not obtain the fair market value for the Collateral;
> 12. [Midwest Regional Bank] did not seek payment from [Caribou] [or] any other guarantors; and
> 15. [Caribou] has avoided liability on the Note.

Pl.'s SUMF Exs. 6, 7, ¶ 6C.  I will strictly construe the terms to which the Individual Defendants agreed as a part of their Unconditional Guarantees, and I find they have waived the above-cited defenses.

It is less clear whether Midwest Regional Bank's refusal to accept SEER Corp.'s purported offer to cure Caribou's default is covered by the mitigation defense waivers in the Unconditional Guarantees.  However, even assuming the Individual Defendants have not waived that specific defense, the Individual Defendants' vague and conclusory description of the SEER offer does not create a dispute of material fact. The Individual Defendants' description of the SEER offer is difficult for the Court to evaluate, because the defendants did not include any factual representations about the circumstances surrounding the offer, such as when SEER made the offer, details about SEER's financial stability and ownership, and the specific terms of the offer.  The Individual Defendants' description of the offer, without supporting evidence, "is insufficient to

10

preclude summary judgment." Allen v. Entergy Corp., 181 F.3d 902, 905 (8th Cir. 1999). Midwest Regional Bank is not required to accept any third-party offer to pay the amount due on the Note, and the Bank is within its rights under the Note and Unconditional Guarantees to reject an unacceptable offer and instead seek payment from the Individual Guarantors.

Finally, Midwest Regional Bank has presented an exhaustive recounting of the efforts it has undertaken to mitigate its damages resulting from Caribou's default. See Pl.'s Mem. in Supp. of Summ. J., ECF No. 47, pp. 9-11. Based on the significant actions Midwest Regional Bank has undertaken to mitigate its damages, I find against the Individual Defendants on their affirmative defense that the Bank failed to mitigate to the extent the defense is not waived by the terms of the Unconditional Guarantees.

### c. Individual Defendants' Liability

Under Missouri law, a creditor seeking to recover on a contract of guaranty must show:

> (1) that the defendant executed the guaranty, (2) that the defendant unconditionally delivered the guaranty to the creditor, (3) that the creditor, in reliance on the guaranty, thereafter extended credit to the debtor, and (4) that there is currently due and owing some sum of money from the debtor to the creditor that the guaranty purports to cover.

<u>ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.</u>, 854 S.W.2d 371, 382 (Mo. 1993) (citing <u>Linwood State Bank v. Lientz</u>, 413 S.W.2d 248, 256 (Mo.1967)).

Midwest Regional Bank has shown each of these four elements is satisfied, and there is no dispute as to the material facts establishing the Individual Defendants' liability on the Unconditional Guarantees. First, the Individual Defendants have admitted that they executed their respective Unconditional Guarantees, and the Bank provided the executed guarantees as exhibits supporting the SUMF [ECF No. 48-5,  ¶¶ 3, 6; ECF Nos. 48-5, 6].  Second, the guarantee document each Individual Defendant signed is titled "Unconditional Guarantee" [ECF Nos. 48-5, 6].  The Individual Defendants also previously stated they were unaware of any conditions attached to delivery of the guarantees [ECF No. 48-8, ¶ 2], and they have not, in response to the Bank's Motion for Summary Judgment, made any factual representations to show otherwise. Third, Midwest Regional Bank relied on the Individual Defendants' Unconditional Guarantees in extending credit to Caribou, and the Bank would not have extended credit absent the Unconditional Guarantees [ECF No. 48-1, ¶ 8].  Fourth, there is in fact a sum due to Midwest Regional Bank from Caribou, and the Unconditional Guarantees purport to cover that sum.  Caribou has defaulted on the Note covered by the Individual Defendants' Unconditional Guarantees, the Bank has made written

12

demands to the Individual Defendants for them to cover all amounts owing under the loan, and the Individual Defendants have not paid the amounts they owe under their respective Unconditional Guarantees.

Finally, Midwest Regional Bank has established that as of August 27, 2019, the principal balance due on the Note was $1,637,876.74, with accrued interest of $157,167.91 and late charges in the amount of $23,800.75.  See Loan Payoff Statement, ECF No. 48-9.  The Bank also established that interest on the principal amount would continue to accrue at the Wall Street Journal Prime Rate plus 2.75%, adjusted quarterly until the date of judgment.  See Note, ECF No. 48-4.  As a result, Midwest Regional Bank is entitled to judgment against Robert Williamson and Christopher Scott Yenzer for breach of contract (guarantee).

## IV.     CONCLUSION

I find that Midwest Regional Bank is entitled to a judgment that Yenzer and Williamson are in breach of their obligations under their Unconditional Guarantees, Midwest Regional Bank has the right to enforce the guarantees, and the balance of the loan is not in dispute.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Midwest Regional Bank's motion for summary judgment is **GRANTED** on Count II (breach of contract as to

Defendant Christopher Scott Yenzer's personal guarantee) and Count III (breach of contract as to Robert Williamson's personal guarantee).

**IT IS FURTHER ORDERED** that Count V of the Complaint (replevin) is **DISMISSED** as moot, because Plaintiff Midwest Regional Bank repossessed the collateral securing the note.

A separate Judgment is issued this same date.

                                               _____
                                               RODNEY W. SIPPEL
                                               UNITED STATES DISTRICT JUDGE

Dated this 6th day of August, 2020.